FILED

Query   Reports   Utilities   Help   Log Out

MEDIATION PRESENT

# U.S. District Court
## Middle District of Florida (Orlando)
### CIVIL DOCKET FOR CASE #: 6:21-cv-00694-CEM-DCI

2021 NOV 15  A :0 55

Securities and Exchange Commission v. Harbor City Capital Corp. et al
Assigned to: Judge Carlos E. Mendoza
Referred to: Magistrate Judge Daniel C. Irick
Cause: 15:0077 Securities Fraud

Date Filed: 04/20/2021
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Securities and Exchange Commission**

represented by **Alise M. Johnson**
Securities and Exchange Commission
801 Brickell Ave., Suite 1800
Miami, FL 33131
Email: johnsonali@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Harbor City Capital Corp.**

**Defendant**

**Harbor City Ventures, LLC**

**Defendant**

**HCCF-1 LLC**

**Defendant**

**HCCF-2 LLC**

**Defendant**

**HCCF-3 LLC**

**Defendant**

**HCCF-4 LLC**

**Defendant**

**HCCF-5 LLC**

**Defendant**

**Harbor City Digital Ventures, Inc.**

**Defendant**

**HCC Media Funding, LLC**

**Defendant**

**Jonathan P. Maroney**

represented by **Mark M. O'Mara**
O'Mara Law Group

Ste 200
221 NE Ivanhoe Blvd
Orlando, FL 32804-6400
407-898-5151
Fax: 407-898-2468
Email: Mark@markomaralaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Celtic Enterprises, LLC**

**Defendant**

**Tonya L. Maroney**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/20/2021 | 1 | COMPLAINT for Injunctive and Other Relief against All Defendants with Jury Demand filed by Securities and Exchange Commission. (Attachments: # 1 Civil Cover Sheet)(SPM) (Entered: 04/26/2021) |
| 04/20/2021 | 2 | MOTION for Leave to File Under Seal by Securities and Exchange Commission. (SPM) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 04/26/2021) |
| 04/20/2021 | 3 | MOTION for Leave to File Its Emergency Ex Parte Motion and Memorandum of Law for Temporary Restraining Order, Asset Freeze, and other Injunctive Relief in Excess of the 25-Page Limit by Securities and Exchange Commission. (SPM) (Entered: 04/26/2021) |
| 04/20/2021 | 4 | Emergency Ex Parte MOTION and Memorandum of Law for Temporary Restraining Order, Asset Freeze, and Other Injunctive Relief by Securities and Exchange Commission. (Attachments: # 1 Exhibit List in Support of Motion, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7,8,9, # 9 Exhibit 10, # 10 Exhibit 11, # 11 Exhibit 12, # 12 Exhibit 13, # 13 Exhibit 14, # 14 Exhibit 15,16,17, # 15 Exhibit 18,19, # 16 Exhibit 20,21, # 17 Exhibit 22, # 18 Exhibit 23, # 19 Exhibit 24,25, # 20 Exhibit 26,27, # 21 Exhibit 28,29,30)(SPM) (Entered: 04/26/2021) |
| 04/20/2021 | 5 | NOTICE of filing CERTIFICATE Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure by Securities and Exchange Commission (SPM) (Entered: 04/26/2021) |
| 04/21/2021 | 6 | **ORDER granting 2 Motion for Leave to File Under Seal; granting 3 Motion for Leave to File Excess Pages; granting 4 Motion for Emergency Ex Parte Temporary Restraining Order, Asset Freeze, and Other Injunctive Relief. As soon as practicable, but no later than Friday, April 23, 2021, Plaintiff shall serve this Order on Defendants and thereafter file proof of service. Plaintiff and Defendants shall appear on Thursday, April 29, 2021, at 2:00 PM in Courtroom 5B, George C. Young United States Courthouse Annex, 401 W. Central Boulevard, Orlando, Florida, before the Honorable Carlos E. Mendoza. Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction without further notice. This Order shall remain in effect for fourteen days unless dissolved or extended for good cause by this Court. Signed by Judge Carlos E. Mendoza on 4/21/2021. (Attachments: # 1 Exhibit Plaintiff's Order) (SPM)** (Entered: 04/26/2021) |
| 04/22/2021 | 7 | SUMMONS issued as to Celtic Enterprises, LLC, HCC Media Funding, LLC, HCCF-1 LLC, HCCF-2 LLC, HCCF-3 LLC, HCCF-4 LLC, HCCF-5 LLC, Harbor City Capital Corp., Harbor City Digital Ventures, Inc., Harbor City Ventures, LLC, Tonya L. Maroney, Jonathan P. Maroney. (SPM) (Entered: 04/26/2021) |
| 04/23/2021 | 8 | MOTION to Lift the Seal and for the Court to Instruct the Clerk of Court to Place All Previously Filed Pleadings, Exhibits, and Orders on the Public Docket by Securities and Exchange Commission. (SPM) (Entered: 04/26/2021) |

| | | |
|---|---|---|
| 04/26/2021 | 9 | **ORDER granting 8 Motion to Lift the Seal and for the Court to Instruct the Clerk of Court to Place All Previously Filed Pleadings, Exhibits, and Orders on the Public Docket. The Clerk is directed to lift the seal on all documents in this case and file them on the public docket. Signed by Judge Carlos E. Mendoza on 4/26/2021. (SPM)** (Entered: 04/26/2021) |
| 04/26/2021 | 10 | RETURN of service executed on 04/23/2021 by Securities and Exchange Commission as to Harbor City Capital Corp.. (Johnson, Alise) (Entered: 04/26/2021) |
| 04/26/2021 | 11 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to Harbor City Digital Ventures, Inc.. (Johnson, Alise) (Entered: 04/26/2021) |
| 04/26/2021 | 12 | NOTICE OF HEARING: Evidentiary Hearing set for 4/29/2021 at 2:00 PM in Orlando Courtroom 5B before Judge Carlos E. Mendoza. The Court will hear argument and the parties may present evidence. The Court has reserved 1-hour for the hearing. (MEH) ctp (Entered: 04/26/2021) |
| 04/26/2021 | 13 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to Harbor City Ventures, LLC. (Johnson, Alise) (Entered: 04/26/2021) |
| 04/26/2021 | 14 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to HCCF-1 LLC. (Johnson, Alise) (Entered: 04/26/2021) |
| 04/26/2021 | 15 | RETURN of service executed on 04/23/2021 by Securities and Exchange Commission as to HCCF-2 LLC. (Johnson, Alise) (Entered: 04/26/2021) |
| 04/26/2021 | 16 | RETURN of service executed on 04/23/2021 by Securities and Exchange Commission as to Celtic Enterprises, LLC. (Johnson, Alise) (Entered: 04/26/2021) |
| 04/26/2021 | 17 | NOTICE regarding Status of Service on Defendants by Securities and Exchange Commission (Johnson, Alise) Modified on 4/27/2021 (SPM). (Entered: 04/26/2021) |
| 04/27/2021 | 18 | **INITIAL ORDER re: Case Management and Deadlines. Signed by Judge Carlos E. Mendoza on 4/27/2021. (MEH) ctp** (Entered: 04/27/2021) |
| 04/27/2021 | 19 | **NOTICE TO COUNSEL AND PARTIES: Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Carlos E. Mendoza on 4/27/2021. (MEH) ctp** (Entered: 04/27/2021) |
| 04/27/2021 | 20 | **ORDER extending TRO through and including May 7, 2021, unless dissolved or extended for good cause by this Court. The preliminary injunction hearing is rescheduled to May 6, 2021, at 2:00 PM. Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction without further notice. Plaintiff shall continue its attempts to notify Defendant Jonathan P. Maroney of the TRO. Additionally, Plaintiff shall provide a copy of this Order to all Defendants. Signed by Judge Carlos E. Mendoza on 4/27/2021. (MEH) ctp** (Entered: 04/27/2021) |
| 04/27/2021 | 21 | NOTICE OF RESCHEDULING HEARING: The Evidentiary Hearing hearing previously scheduled for 04/29/2021 is rescheduled. New scheduling date and time: Evidentiary Hearing set for 5/6/2021 at 2:00 PM in Orlando Courtroom 5B before Judge Carlos E. Mendoza. The Court has reserved 1-hour for the hearing. (MEH) ctp (Entered: 04/27/2021) |
| 04/30/2021 | 22 | NOTICE of Appearance by Mark M. O'Mara on behalf of Jonathan P. Maroney (O'Mara, Mark) (Entered: 04/30/2021) |
| 05/04/2021 | 23 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to HCC Media Funding, LLC. (Johnson, Alise) (Entered: 05/04/2021) |
| 05/04/2021 | 24 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to HCCF-3 LLC. (Johnson, Alise) (Entered: 05/04/2021) |
| 05/04/2021 | 25 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to HCCF-4 LLC. (Johnson, Alise) (Entered: 05/04/2021) |
| 05/04/2021 | 26 | RETURN of service executed on 04/26/2021 by Securities and Exchange Commission as to HCCF-5 LLC. (Johnson, Alise) (Entered: 05/04/2021) |

| 05/04/2021 | 27 | Unopposed MOTION to Extend Temporary Restraining Order Dated April 21, 2021 and Extended by this Court on April 27, 2021 and Request for Telephone Hearing by Jonathan P. Maroney. (O'Mara, Mark) Modified on 5/4/2021 (SPM). (Entered: 05/04/2021) |
| --- | --- | --- |
| 05/04/2021 | 28 | NOTICE OF HEARING: re: 27 Unopposed Motion to Extend Temporary Restraining Order Dated April 21, 2021 and Extended by this Court on April 27, 2021 and Request for Telephone Hearing . Telephone Conference set for 5/5/2021 at 2:00 PM in Orlando Courtroom 5B before Judge Carlos E. Mendoza. The parties shall call 866-434-5269 five minutes before the hearing is scheduled to begin. Access Code: 4420602. Security Code: 050521. (MEH) ctp (Entered: 05/04/2021) |
| 05/05/2021 | 29 | Minute Entry. Telephonic Proceedings held before Judge Carlos E. Mendoza: TELEPHONE CONFERENCE held on 5/5/2021. Court Reporter: Suzanne L. Trimble (MEH) ctp (Entered: 05/05/2021) |
| 05/05/2021 | 30 | NOTICE canceling Evidentiary Hearing hearing scheduled for 05/06/2021. (MEH) ctp (Entered: 05/05/2021) |
| 05/05/2021 | 31 | **ENDORSED ORDER granting in part 27 Unopposed Motion to Extend Temporary Restraining Order for the reasons stated on the record at the 29 May 5, 2021 Hearing. The 6 Temporary Restraining Order issued by the Court on April 21, 2021, and extended by 20 Order on April 27, 2021, is extended through and including Wednesday, May 12, 2021. Signed by Judge Carlos E. Mendoza on 5/5/2021. (VLC) (Entered: 05/05/2021)** |
| 05/11/2021 | 32 | NOTICE OF HEARING: Telephone Conference set for 5/12/2021 at 3:00 PM in Orlando Courtroom 5B before Judge Carlos E. Mendoza. The parties shall call 866-434-5269 five minutes before the hearing is scheduled to begin. Access Code: 4420602. Security Code: 051221.(MEH) ctp (Entered: 05/11/2021) |
| 05/11/2021 | 33 | NOTICE of a related action per Local Rule 1.07(c) by Securities and Exchange Commission. Related case(s): No (Johnson, Alise) Modified on 5/11/2021 (SPM). (Entered: 05/11/2021) |
| 05/11/2021 | 34 | CERTIFICATE of interested persons and corporate disclosure statement re 18 Order *Case Management and Deadlines* by Securities and Exchange Commission. (Johnson, Alise) (Entered: 05/11/2021) |
| 05/12/2021 | 35 | NOTICE of Filing Consents by Jonathan P. Maroney (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit)(O'Mara, Mark) Modified on 5/13/2021 (SPM). (Entered: 05/12/2021) |
| 05/12/2021 | 36 | Minute Entry. Telephonic Proceedings held before Judge Carlos E. Mendoza: TELEPHONE CONFERENCE held on 5/12/2021. Court Reporter: Suzanne L. Trimble (MEH) ctp (Entered: 05/12/2021) |
| 05/12/2021 | 37 | NOTICE OF HEARING: Evidentiary Hearing set for 5/19/2021 at 12:00 PM in Orlando Courtroom 5B before Judge Carlos E. Mendoza. The Court has reserved 1-hour for the hearing. (MEH) ctp (Entered: 05/12/2021) |
| 05/12/2021 | 38 | **ENDORSED ORDER extending 6 the Temporary Restraining Order issued by the Court on April 21, 2021, through and including Wednesday, May 19, 2021, for the good cause reasons stated on the record at the 36 May 12, 2021 hearing. Signed by Judge Carlos E. Mendoza on 5/12/2021. (VLC) (Entered: 05/12/2021)** |
| 05/18/2021 | 39 | DECLARATION/Consent of Jonathan P. Maroney to Entry of Preliminary Injunction, To Continue Asset Freeze and Other Relief by Jonathan P. Maroney. (Attachments: # 1 Exhibit)(O'Mara, Mark) Modified on 5/19/2021 (SPM). (Entered: 05/18/2021) |
| 05/19/2021 | 40 | MOTION for Clerk's Default against Celtic Enterprises, LLC, HCCF-2 LLC, Harbor City Capital Corp. by Securities and Exchange Commission. (Johnson, Alise) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/19/2021) |
| 05/19/2021 | 41 | DECLARATION/Consent of Tonya L. Maroney to Entry of Preliminary Injunction, To Continue Asset Freeze and Other Relief by Jonathan P. Maroney. (Attachments: # 1 Exhibit)(O'Mara, Mark) Modified on 5/19/2021 (SPM). (Entered: 05/19/2021) |

| 05/19/2021 | 42 | **ENDORSED ORDER granting 40 Motion for Clerk's Default. The Clerk is directed to enter default as to Celtic Enterprises, LLC, HCCF-2 LLC, and Harbor City Capital Corp. Signed by Magistrate Judge Daniel C. Irick on 5/19/2021. (Irick, Daniel)** (Entered: 05/19/2021) |
| 05/19/2021 | 43 | Clerk's ENTRY OF DEFAULT as to HCCF-2 LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 44 | Clerk's ENTRY OF DEFAULT as to Harbor City Capital Corp. (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 45 | Clerk's ENTRY OF DEFAULT as to Celtic Enterprises, LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 46 | MOTION for Clerk's Default against HCC Media Funding, LLC, HCCF-1 LLC, HCCF-3 LLC, HCCF-4 LLC, HCCF-5 LLC, Harbor City Digital Ventures, Inc., Harbor City Ventures, LLC by Securitics and Exchange Commission. (Johnson, Alise) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 05/19/2021) |
| 05/19/2021 | 47 | Minute Entry. In Person Proceedings held before Judge Carlos E. Mendoza: Evidentiary Hearing held on 5/19/2021. Court Reporter: Suzanne L. Trimble (MEH) ctp (Entered: 05/19/2021) |
| 05/19/2021 | 48 | **ENDORSED ORDER granting 46 Motion for Clerk's Default. The Clerk is directed to enter default as to HCC Media Funding, LLC, HCCF-1 LLC, HCCF-3 LLC, HCCF-4 LLC, HCCF-5 LLC, Harbor City Digital Ventures, Inc., and Harbor City Ventures, LLC. Signed by Magistrate Judge Daniel C. Irick on 5/19/2021. (Irick, Daniel)** (Entered: 05/19/2021) |
| 05/19/2021 | 49 | Clerk's ENTRY OF DEFAULT as to HCC Media Funding, LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 50 | Clerk's ENTRY OF DEFAULT as to HCCF-5 LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 51 | Clerk's ENTRY OF DEFAULT as to HCCF-4 LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 52 | Clerk's ENTRY OF DEFAULT as to HCCF-3 LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 53 | Clerk's ENTRY OF DEFAULT as to HCCF-1 LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 54 | Clerk's ENTRY OF DEFAULT as to Harbor City Ventures, LLC (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 55 | Clerk's ENTRY OF DEFAULT as to Harbor City Digital Ventures, Inc. (SPM) (Entered: 05/19/2021) |
| 05/19/2021 | 56 | **ORDER- Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order, Asset Freeze, and Other Injunctive Relief (Doc. 4) is GRANTED insofar as it seeks a preliminary injunction. The Temporary Restraining Order (Doc. 6-1 at 3-12) is converted to a preliminary injunction and ADOPTED and made a part of this Order. Signed by Judge Carlos E. Mendoza on 5/19/2021. (MEH) ctp** (Entered: 05/19/2021) |
| 06/07/2021 | 57 | CERTIFICATE of interested persons and corporate disclosure statement re 18 Order *Case Management and Deadlines* by Jonathan P. Maroney. (O'Mara, Mark) (Entered: 06/07/2021) |
| 06/08/2021 | 58 | CASE MANAGEMENT REPORT. (Johnson, Alise) (Entered: 06/08/2021) |
| 06/16/2021 | 59 | Unopposed MOTION for Extension of Time to File or Apply for Default Judgments Pursuant to Middle District Local Rule 1.10(c) by Securities and Exchange Commission. (Johnson, Alise) (Entered: 06/16/2021) |
| 06/16/2021 | 60 | Unopposed MOTION to Appoint Receiver *and Memorandum of Law* by Securities and Exchange Commission. (Attachments: # 1 Exhibit 1 - Katherine C. Donlon, Esq., # 2 Exhibit 2 - Guerra King, # 3 Exhibit 3 - Buchanan Ingersoll)(Johnson, Alise) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 06/16/2021) |
| 06/17/2021 | 61 | **ORDER granting 59 Unopposed Motion for Extension of Deadline to Apply for Default Judgments Pursuant to Local Rule 1.10(c). The SEC may file a motion for default judgment against the Corporate Defendants and Celtic but must do so no later than 14 days after the claims against Defendant Maroney have been resolved. See Order. Signed by Magistrate Judge Daniel C. Irick on 6/17/2021. (RN)** Modified on 6/17/2021 (RN). (Entered: 06/17/2021) |
| 06/22/2021 | 62 | **CASE MANAGEMENT AND SCHEDULING ORDER: Amended Pleadings due by 8/28/2021 Joinder of Parties due by 8/28/2021 Discovery due by 9/2/2022 Dispositive motions due by 10/4/2022 Pretrial statement due by 2/6/2023 All other motions due by 2/6/2023 Plaintiff** |

| | | disclose of expert report due by 7/5/2022 Defendant disclosure of expert report due by 8/4/2022 Trial Status Conference set for 2/16/2023 at 10:00 AM in Orlando Courtroom 5B before Judge Carlos E. Mendoza Jury Trial set for March 2023 in Orlando Courtroom 5B before Judge Carlos E. Mendoza. Conduct mediation hearing by 9/16/2022. Lead counsel to coordinate dates. Signed by Judge Carlos E. Mendoza on 6/22/2021. (MEH) ctp (Entered: 06/22/2021) |
|---|---|---|
| 06/22/2021 | 63 | **ORDER directing the parties to confer, and then advise the Court, on the selection of a mediator, on or before July 6, 2021. Signed by Judge Carlos E. Mendoza on 6/22/2021. (MEH) ctp** (Entered: 06/22/2021) |
| 06/22/2021 | 64 | CASE REFERRED to Mediation. (SPM) (Entered: 06/22/2021) |
| 07/06/2021 | 65 | JOINT NOTICE OF SELECTION of Howard Tescher as mediator by Securities and Exchange Commission. (Johnson, Alise) Modified on 7/6/2021 (SPM). (Entered: 07/06/2021) |
| 07/21/2021 | 66 | **REPORT AND RECOMMENDATIONS re 60 Unopposed MOTION to be GRANTED to the extent that Ms. Donlon be appointed as receiver. Signed by Magistrate Judge Daniel C. Irick on 7/21/2021. (DS)** (Entered: 07/21/2021) |
| 08/06/2021 | 67 | MOTION to Appoint Receiver by Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order)(Johnson, Alise) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 08/06/2021) |
| 08/11/2021 | 68 | **ORDER adopting 66 Report and Recommendations; granting in part and denying in part 60 Motion to Appoint Receiver. The Motion is GRANTED insofar as Katherine Donlon, Esq. is appointed to serve as receiver over Defendants Harbor City Capital Corp.; Harbor City Ventures, LLC; HCCF-1 LLC; HCCF-2 LLC; HCCF-3 LLC; HCCF-4 LLC; HCCF-5 LLC; Harbor City Digital Ventures, Inc.; HCC Media Funding, LLC; and Relief Defendant Celtic Enterprises, LLC. The Motion is otherwise DENIED. Plaintiff's Motion for Entry of Proposed Order Appointing Receiver (Doc. 67) is REFERRED to the Magistrate Judge for consideration. Ms. Donlon is not authorized to act as receiver until the Court enters an order concerning the scope of her powers. Signed by Judge Carlos E. Mendoza on 8/11/2021. (MEH) ctp** (Entered: 08/11/2021) |
| 08/11/2021 | 69 | **ORDER denying 67 Motion to Appoint Receiver. See Order. Signed by Magistrate Judge Daniel C. Irick on 8/11/2021. (RN)** (Entered: 08/11/2021) |
| 08/13/2021 | 70 | Unopposed MOTION for Leave to File Other Document :Proposed Order Appointing Receiver by Securities and Exchange Commission. (Johnson, Alise) Modified on 8/16/2021 (SPM). (Entered: 08/13/2021) |
| 08/16/2021 | 71 | **ENDORSED ORDER granting 70 Unopposed Motion for Leave to File Proposed Order Appointing Receiver. Signed by Magistrate Judge Daniel C. Irick on 8/16/2021. (Irick, Daniel)** (Entered: 08/16/2021) |
| 08/18/2021 | 72 | NOTICE of Filing Proposed Order Appointing Receiver by Securities and Exchange Commission (Attachments: # 1 Proposed Order)(Johnson, Alise) Modified on 8/19/2021 (SPM). Modified on 10/20/2021 (SPM). (Entered: 08/18/2021) |
| 09/07/2021 | 73 | *Defendant, Jonathan P. Maroney's* ANSWER to 1 Complaint by Jonathan P. Maroney.(O'Mara, Mark) (Entered: 09/07/2021) |
| 10/21/2021 | 74 | **REPORT AND RECOMMENDATION re 72 NOTICE of Filing Proposed Order Appointing Receiver filed by Securities and Exchange Commission. It is respectfully RECOMMENDED that the Court enter the Proposed Order (Doc. 72-1). See Order. Signed by Magistrate Judge Daniel C. Irick on 10/21/2021. (RN)** (Entered: 10/21/2021) |
| 11/08/2021 | 75 | **ORDER adopting 74 Report and Recommendations; adopting 72 Motion for Appointment of Receiver. Signed by Judge Carlos E. Mendoza on 11/8/2021. (MEH) ctp** (Entered: 11/08/2021) |

**PACER Service Center**

**Transaction Receipt**

| 11/11/2021 11:40:46 | | | |
|---|---|---|---|
| **PACER Login:** | ju2108 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:21-cv-00694-CEM-DCI |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION       2021 NOV 15  A 10: 54

U.S. D    DISTRICT
MID. D

**SECURITIES AND EXCHANGE
COMMISSION,**

**Plaintiff,**

v.                                        **Case No. 6:21-cv-694-CEM-DCI**

**HARBOR CITY CAPITAL
CORP., HARBOR CITY
VENTURES, LLC, HCCF-1 LLC,
HCCF-2 LLC, HCCF-3 LLC,
HCCF-4 LLC, HCCF-5 LLC,
HARBOR CITY DIGITAL
VENTURES, INC., HCC MEDIA
FUNDING, LLC, JONATHAN P.
MARONEY, CELTIC
ENTERPRISES, LLC, and
TONYA L. MARONEY,**

**Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Notice of Filing Proposed

Order Appointing Receiver (Doc. 72). The United States Magistrate Judge issued a

Report and Recommendation (Doc. 74), recommending that the Court enter the

Order Granting Plaintiff's Unopposed Motion for Appointment of Receiver (Doc.

72-1). (Doc. 74 at 2).

After review in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, and noting that no objections were timely filed, the Magistrate Judge's recommended disposition is accepted. Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 74) is **ADOPTED** and made a part of this Order.

2. The Order Granting Plaintiff's Unopposed Motion for Appointment of Receiver (Doc. 72-1) is **ADOPTED** and made a part of this Order.

**DONE** and **ORDERED** in Orlando, Florida on November 8, 2021.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SECURITIES AND EXCHANGE
COMMISSION,**

**Plaintiff,**

v.

**Case No: 6:21-cv-694-CEM-DCI**

**HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1 LLC, HCCF-2 LLC, HCCF-3
LLC, HCCF-4 LLC, HCCF-5 LLC,
HARBOR CITY DIGITAL VENTURES,
INC., HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY, CELTIC
ENTERPRISES, LLC and TONYA L.
MARONEY,**

**Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration of a Notice filed by the Securities and Exchange Commission (SEC) that includes as an attachment a 24-page Proposed Order Appointing Receiver. Docs. 72 (the Notice); 72-1 (the Proposed Order). The Notice has been referred to the undersigned for consideration and issuance of a report and recommendation.

On June 16, 2021, the SEC filed a Motion to Appoint Receiver. Doc. 60. That motion was referred to the undersigned for consideration, and the undersigned issued a report recommending that the motion be granted in part (to the extent a receiver should be appointed) but denied in part (to the extent the SEC requested that a particular order should issue delineating the receiver's powers and responsibilities). Doc. 66. Indeed, as the undersigned noted, "the SEC provided neither a proposed order as an attachment to the Motion, nor set forth in the Motion what powers the Court should vest in the receiver." *Id.* at 4. The undersigned recommended that the Court

"direct[] the SEC to file a proposed order delineating the receiver's responsibilities and powers."
*Id.*

Prior to the expiration of the objection period for that report, the SEC filed a Motion for
Entry of Proposed Order Appointing Receiver and attached to that motion a proposed order
appointing the receiver. Docs. 67; 67-1.

Then, with no objection having been filed to the report, the Court entered an order adopting
the report. Doc. 68. In that order, the Court adopted the report and referred to the undersigned the
foregoing motion. *Id.* at 2-3. But because that motion failed to comply with Local Rules 3.01(a)
and (g), the undersigned denied that motion. Doc. 67. Finally, on August 18, 2021, the SEC filed
the Notice and Proposed Order. Docs. 72; 72-1. Despite ample opportunity to do so, no party has
objected to the Notice or the Proposed Order, and the undersigned notes that the Motion for Entry
of Proposed Order Appointing Receiver was unopposed. The undersigned has reviewed the
Proposed Order—which appears to be unopposed—and finds that it is due to be entered by the
Court.

Accordingly, it is respectfully **RECOMMENDED** that the Court enter the Proposed Order
(Doc. 72-1).

**Recommended** in Orlando, Florida on October 21, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

- 2 -

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CIVIL ACTION NO. 6:21-cv-694-CEM-DCI

### SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

**HARBOR CITY CAPITAL CORP.,**
**HARBOR CITY VENTURES LLC,**
**HCCF-1 LLC,**
**HCCF-2 LLC,**
**HCCF-3 LLC,**
**HCCF-4 LLC,**
**HCCF-5 LLC,**
**HARBOR CITY DIGITAL VENTURES INC.,**
**HCC MEDIA FUNDING LLC,**
**JONATHAN P. MARONEY,**

Defendants,

and

**CELTIC ENTERPRISES LLC and**
**TONYA L. MARONEY,**

Relief Defendants.

_____/

### ORDER GRANTING PLAINTIFF
### SECURITIES AND EXCHANGE COMMISSION'S
### UNOPPOSED MOTION FOR APPOINTMENT OF RECEIVER

THIS CAUSE came before the Court on Plaintiff Securities and Exchange

Commission's Unopposed Motion and Memorandum of Law for Appointment of

Receiver [DE 60]. The Court has already granted the Motion in part in so far as

Katherine Donlon, Esq. is appointed to serve as receiver over defendants Harbor City Capital Corp., Harbor City Ventures LLC, HCCF-1 LLC, HCCF-2 LLC, HCCF-3 LLC, HCCF-5 LLC, Harbor City Digital Ventures Inc., HCC Media Funding LLC, and relief defendant Celtic Enterprises LLC ("Receivership Entities") *See* Order (Doc. 68). In addition to the Court's appointment of Ms. Donlon as Receiver, it is further **ORDERED AND ADJUDGED** that the Motion [DE 60] is **GRANTED** as follows:

1.    The Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities.

2.    Until further Order of this Court, Katherine C. Donlon is appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Entities and is given authority to retain Nicole D. Newlon of Johnson, Cassidy, Newlon & DeCort, as counsel.

**I. Asset Freeze**

3.    Except as otherwise specified herein, all Receivership Assets are frozen until further order of the Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be

2

limited to, Receivership Assets in the form of real estate and funds that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds.

## II. General Powers and Duties of Receiver

4.     The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members and general and limited partners of the Receivership Entities under applicable state, federal, or foreign law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66.

5.     The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors, members and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all their claims.

3

6.      No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

7.      Subject to the specific provisions in Sections III through XIV, below, the Receiver has the following general powers and duties:

> A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");
>
> B.      To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;
>
> C.      To manage, control, operate and maintain the Receivership Estates and hold in Receiver's possession, custody and control all Receivership Property, pending further Order of the Court;
>
> D.      To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging Receiver's duties;
>
> E.      To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, members, managers, trustees and agents of the Receivership Entities;
>
> F.      To engage and employ persons in Receiver's discretion to assist Receiver in carrying out Receiver's duties and responsibilities hereunder, including, but not limited to, accountants, attorneys,

4

securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.     To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.     The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.     To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging Receiver's duties;

J.     To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

K.     To take such other action as may be approved by the Court.

## III. Access to Information

8.     The Receivership Entities and the past and/or present officers, directors, agents, members, managers, general and limited partners, trustees, attorneys, accountants and employees of the Receivership Entities, as well as those acting in their place, are ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

5

9.     The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys,  members, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities. In the event the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

10.     The Receiver is authorized to issue subpoenas, to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Federal Rule of Civil Procedure 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

**IV. Access to Books, Records and Accounts**

11.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Entities.  All persons and

6

entities having control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

12.     The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, members, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall cooperate with and assist the Receiver in the performance of Receiver's duties.

13.     The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Entities are directed to deliver the same to the Receiver or the Receiver's agents and/or employees.

14.     All banks, brokerage firms, financial institutions, and other persons or entities that have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Entities that receive actual notice of this Order by personal service, email, overnight delivery, mail, facsimile transmission or otherwise shall:

> A.     Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.     Within five (5) business days of receipt of that notice, serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

15.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including, but not limited to, electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

16.     The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, overnight delivery, mail, facsimile

8

transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

17.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys. The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

18.    The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

**VI. Notice to Third Parties**

19.    The Receiver shall promptly give notice of Receiver's appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, members, managers and general and limited partners of the Receivership Entities,

as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

20.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Entity shall, until further ordered by the Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entity had received such payment.

21.    In furtherance of Receiver's responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

22.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver

10

concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any Receivership Entities, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

23.    Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII. Injunction Against Interference with Receiver

24.    The Receivership Entities and all persons receiving notice of this Order by personal service, email, overnight delivery, mail, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or

11

causing any action to be taken, without the express written agreement of the Receiver, which would:

> A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;
>
> B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;
>
> C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Entity, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Entity or which otherwise affects any Receivership Property; or,
>
> D. Interfere with or harass the Receiver or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Entities.

25.    The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

**VIII. Stay of Litigation**

26. As set forth in detail below, the following proceedings, excluding the

instant proceeding and all police or regulatory actions and actions of the

Commission related to the above-captioned enforcement action, are stayed until

further Order of the Court:

All civil legal proceedings of any nature, including, but not limited to,
bankruptcy proceedings, arbitration proceedings, foreclosure actions,
default proceedings, or other actions of any nature involving: (a) the
Receiver, in Receiver's capacity as Receiver; (b) any Receivership Property,
wherever located; (c) any of the Receivership Entities, including subsidiaries
and partnerships; or, (d) any of the Receivership Entities' past or present
officers, directors, managers, agents, or general or limited partners sued for,
or in connection with, any action taken by them while acting in such
capacity of any nature, whether as plaintiff, defendant, third-party plaintiff,
third-party defendant, or otherwise (such proceedings are hereinafter
referred to as "Ancillary Proceedings").

27. The parties to any and all Ancillary Proceedings are enjoined from

commencing or continuing any such legal proceeding, or from taking any action,

in connection with any such proceeding, including, but not limited to, the issuance

or employment of process.

28. All Ancillary Proceedings are stayed in their entirety, and all courts

having any jurisdiction thereof are enjoined from taking or permitting any action

until further Order of this Court. Further, as to a cause of action accrued or

accruing in favor of one or more of the Receivership Entities against a third person

or party, any applicable statute of limitation is tolled during the period in which

13

this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX. Managing Assets

29. For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

30. The Receiver's deposit account shall be entitled, together with the name of the action:

> A. Receiver's Account, Estate of Harbor City Capital Corp.
>
> B. Receiver's Account, Estate of Harbor City Ventures LLC
>
> C. Receiver's Account, Estate of HCCF-1 LLC
>
> D. Receiver's Account, Estate of HCCF-2 LLC
>
> E. Receiver's Account, Estate of HCCF-3 LLC
>
> F. Receiver's Account, Estate of HCCF-4 LLC
>
> G. Receiver's Account, Estate of HCCF-5 LLC
>
> H. Receiver's Account, Estate of Harbor City Digital Ventures Inc.
>
> I. Receiver's Account, Estate of HCC Media Funding LLC
>
> J. Receiver's Account, Estate of Celtic Enterprises LLC

31. The Receiver may, without further Order of the Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real

14

estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

32.    Subject to Paragraph 33 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

33.    Upon further Order of the Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

34.    The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

15

35.     The Receiver shall take all necessary steps to enable the Receivership
Funds to obtain and maintain the status of a taxable "Settlement Fund," within the
meaning of Section 468B of the Internal Revenue Code and of the regulations,
when applicable.

36.     Upon request by the Receiver, any company providing telephone
services to the Corporate Defendants or Relief Defendants shall provide a reference
of calls from any number presently assigned to the Defendants and Relief
Defendants to any such number designated by the Receiver or perform any other
changes necessary to the conduct of the receivership.

37.     In the event the Receiver discovers that funds of persons who have
invested in HARBOR CITY CAPITAL CORP., HARBOR CITY VENTURES LLC,
HCCF-1 LLC, HCCF-2 LLC, HCCF-3 LLC, HCCF-4 LLC, HCCF-5 LLC, HARBOR
CITY DIGITAL VENTURES INC., or HCC MEDIA FUNDING LLC,  have been
transferred to other persons or entities, the Receiver shall apply to this Court for an
Order giving the Receiver possession of such funds and, if the Receiver deems it
advisable, extending this receivership over any person or entity holding such
investor funds.

## X. Investigate and Prosecute Claims

38.     Subject to the requirement, in Section VII above, that leave of this
Court is required to resume or commence certain litigation, the Receiver is

authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in Receiver's discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

39.    Subject to Receiver's obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

40.    The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all Receivership Entities.

17

41.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, Receiver's Retained Personnel (as that term is defined below), and the Receivership Estate.

## XI. Bankruptcy Filing

42.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Entities. If a Receivership Entity is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all Receivership Entities and may therefore file and manage a Chapter 11 petition.

43.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Entities in bankruptcy proceedings.

## XII. Liability of Receiver

18

44.     Until further Order of the Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with Receiver's fiduciary obligations in this matter.

45.     The Receiver and Receiver's agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all outstanding rules of law and Orders of the Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

46.     The Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

47.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

19

## XIII. Recommendations and Reports

48.     The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

49.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

50.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

51.     The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one

20

column for the quarterly period covered and a second column for the entire duration of the receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F. A list of all known creditors with their addresses and the amounts of their claims;

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

52.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV. Fees, Expenses and Accountings

53.     Subject to Paragraphs 54-59 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the

receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

54.    Subject to Paragraph 55 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist Receiver in carrying out the duties and responsibilities described in this Order. Except for counsel retained by the Receiver pursuant to Paragraph 2 of this Order, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

55.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

56.    Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all

exhibits and relevant billing information in a format to be provided by Commission staff.

57.    All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the receivership.

58.    Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership. Each Quarterly Fee Application shall:

> A. Comply with the terms of the Billing Instructions agreed to by the Receiver; and,
>
> B. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

23

59.     At the close of the Receivership, the Receiver shall submit a Final

Accounting, in a format to be provided by Commission staff, as well as the

Receiver's final application for compensation and expense reimbursement.

**DONE AND ORDERED** in Orlando, Florida on August __, 2021.

> **CARLOS E. MENDOZA**
> **UNITED STATES DISTRICT JUDGE**

cc: counsel of record

24

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

CASE NO. 6:21-cv-694-CEM-DCI

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

Vs.

HARBOR CITY CAPITAL CORP.,
HARBOR CITY VENTURES, LLC,
HCCF-1 LLC,
HCCF-2 LLC,
HCCF-3 LLC,
HCCF-4 LLC,                                    **UNDER SEAL**
HCCF-5 LLC,
HARBOR CITY DIGITAL VENTURES, INC.,
HCC MEDIA FUNDING, LLC,
JONATHAN P. MARONEY,

Defendants,

And

CELTIC ENTERPRISES, LLC,
TONYA L. MARONEY,

Relief Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission ("Commission") alleges:

I.   **INTRODUCTION**

1.      This an emergency action to stop an ongoing, fraudulent Ponzi-scheme victimizing hundreds of investors across the United States. From at

least May 2015 and continuing through the present, Harbor City Capital Corp. ("Harbor City") and its founder and Chief Executive Officer, Jonathan P. Maroney, have raised more than $17.1 million through a series of unregistered fraudulent securities offerings in several entities formed and controlled by Harbor City and Maroney.

2.     The offerings were in a company called Harbor City Ventures, LLC ("HC Ventures"), and five "special purpose" entities, HCCF-1 LLC, HCCF-2 LLC, HCCF-3 LLC, HCCF-4 LLC and HCCF-5 LLC (collectively referred to as the "HC SPEs"). Harbor City served as the Manager of the HCCF-1 through HCCF-4 offerings, and another Maroney created and controlled company, Harbor City Digital Ventures, Inc. ("HC Digital"), served as their "Operator." HCC Media Funding, LLC ("HCC Media"), controlled by Maroney, serves as both the Manager and Operator of the ongoing HCCF-5 offering.

3.     The securities sold were in form of either promissory notes, funding agreements, or "high yield, secured bonds" (in the case of the HC SPEs), promising returns ranging from 1% to 5% per month. The purported purpose of the offerings was to provide bridge funding for Harbor City's and its related companies' customer lead generation sales businesses. Investors were solicited primarily through Harbor City's website and a series of on-line marketing videos featuring Maroney posted on YouTube.

2

4.     Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital, HCC Media, and Maroney, orally and in offering materials, made material misrepresentations and omissions to investors and engaged in a scheme to defraud and a course of conduct designed to deceive investors. Specifically, despite statements made by Harbor City, HC Ventures, the HC SPEs, HC Digital, and HCC Media in the offering materials that investor funds would be used to finance Harbor City's customer lead generation campaigns, Defendants misappropriated approximately $4.48 million in investor funds, which was diverted for Defendant Maroney's personal use.

5.     Of the millions in investor funds that Defendant Maroney diverted for his personal use, Relief Defendants Celtic Enterprises ("Celtic") and Tonya Maroney, received more than $1 million in ill-gotten gains for no legitimate reason.

6.     Defendants also misused approximately $1.4 million of investor money by making payments to other entities unrelated to the supposed purpose of the offerings. Moreover, at least $6.5 million of the returns distributed to investors were in reality Ponzi-like payments funded by other investors.

7.     In addition, Defendants made other false claims and omissions to investors regarding, among other things, Harbor City's purported UCC lien

3

filings and its "Standby Line of Credit," and Maroney's prior disciplinary history with Alabama securities regulators.

8.     Through their conduct, Defendants have violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act").   Unless restrained and enjoined, Defendants are reasonably likely to engage in future violations of the federal securities laws.

## II.   DEFENDANTS AND RELIEF DEFENDANTS

### A.   Defendants

9.     **Harbor City** is a Nevada corporation formed in December 2014 with its principal place of business in Melbourne, Florida.   Harbor City and its securities have never been registered with the Commission in any capacity. Harbor City filed a Form D Notice of Exempt Offering of Securities with the Commission on January 29, 2019, seeking to raise $1,000,000 in debt securities with a $50,000 minimum investment amount purportedly under a Rule 506(c) exemption.

10.     **HC Ventures** is a Nevada limited liability company established in 2014 with its principal place of business in Melbourne, Florida.   HC Ventures and its securities have never been registered with the Commission in any capacity.

4

11.     **HCCF-1** is a Nevada limited liability company formed in August 2018 with its principal place of business in Melbourne, Florida.  HCCF-1 is wholly-owned and managed by Harbor City.  HCCF-1 and its securities have never been registered with the Commission in any capacity.

12.     **HCCF-2** is a Nevada limited liability company formed in April 2019 with its principal place of business in Melbourne, Florida.  HCCF-2 is wholly-owned and managed by Harbor City.  HCCF-2 and its securities have never been registered with the Commission in any capacity.

13.     **HCCF-3** is a Wyoming limited liability company formed in September 2019 with its principal place of business in Melbourne, Florida. HCCF-3 is wholly-owned and managed by Harbor City.  HCCF-3 and its securities have never been registered with the Commission in any capacity.

14.     **HCCF-4** is a Wyoming limited liability company formed in November 2019 with principal place of business in Melbourne, Florida. HCCF-4 is wholly-owned and managed by Harbor City.  HCCF-4 and its securities have never been registered with the Commission in any capacity.

15.     **HCCF-5** is a Wyoming limited liability company formed in July 2020 with its principal place of business in Melbourne, Florida.  HCCF-5 is wholly-owned and managed by Harbor City.  HCCF-5 and its securities have never been registered with the Commission in any capacity.

16.     **HC Digital** is a Nevada corporation established in 2017 with its principal place of business in Melbourne, Florida. HC Digital is the "Operator" of the HCCF-1, HCCF-2, HCCF-3 and HCCF-4 offerings.

17.     **HCC Media** is a Wyoming limited liability company established in 2020 with its principal place of business in Melbourne, Florida. HCC Media is both the Manager and "Operator" of the HCCF-5 offering.

18.     **Maroney**, 50, resides in Melbourne, Florida.   Maroney is the founder, Chief Executive Officer, and President of Harbor City, and the President of HC Digital. He is also the sole Manager of HC Ventures, HCC Media, and each of the HC SPEs.   In June 2020, the Alabama Securities Commission issued a cease and desist order prohibiting Maroney, Harbor City and HC Digital from offering or selling securities in the state.

## B.     Relief Defendants

19.     **Celtic** is a Wyoming limited liability company with its principal place of business listed in Melbourne, Florida.   Maroney is the Manager of Celtic.   Without any legitimate basis, Celtic received at least $617,000 in ill-gotten gains emanating from the Defendants' securities fraud.

20.     **Tonya L. Maroney**, 51, resides in Melbourne, Florida and is married to Jonathan P. Maroney. Without any legitimate basis, Tonya Maroney

6

received at least $452,000 in ill-gotten gains emanating from the Defendants'
securities fraud.

## III.    JURISDICTION AND VENUE

21.    The Court has jurisdiction over this action pursuant to Sections
20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a);
and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e),
and 78aa.

22.    The Court has personal jurisdiction over the Defendants and Relief
Defendants, and venue is proper in the Middle District of Florida, because many
of the Defendants' acts and transactions constituting violations of the Securities
Act and the Exchange Act occurred in the Middle District of Florida.   In
addition, the principal place of business of all the entity Defendants and Relief
Defendant Celtic was in the Middle District of Florida, and during the relevant
time period, Jonathan and Tonya Maroney resided in the Middle District of
Florida.

23.    In connection with the conduct alleged in this Complaint, the
Defendants, directly and indirectly, singly or in concert with others, have made
use of the means or instrumentalities of interstate commerce, the means or
instruments of transportation and communication in interstate commerce, and
the mails.

7

## IV.   THE DEFENDANTS' FRAUD

### A.   Defendants' Unregistered Securities Offerings

24.     From at least 2015, continuing through the present, Harbor City, HC Ventures, the HC SPEs, HC Digital, and HCC Media, through Maroney, have raised more than S17.1 million from more than 100 investors nationwide through a series of unregistered fraudulent securities offerings.   Initially, starting in about May 2015, the securities sold were in form of either promissory notes or agreements entitled "Unsecured Promissory Notes" and "Fixed-Rate Funding Agreements" issued by HC Ventures, an affiliated entity Maroney controlled.

25.     These earlier notes and agreements offered investors interest rates varying from 2% to 5% per month for terms ranging from 12 to 36 months. Investors in those instruments were promised a full return of their investment principal upon maturity.

26.     Beginning in late 2018, the securities sold took the form of "high yield, secured bonds" issued by the five "special purpose" entities formed and controlled by Maroney — first, through HCCF-1, followed by HCCF-2, HCCF-3, HCCF-4, and most recently HCCF-5.   The so-called high yield, secured bonds issued in the HC SPEs offerings promised interest rates that varied from 1% to 1.5% per month.   The bonds are offered in 1, 2, 3 or 5 year terms, with a

8

guaranteed return of investment principal at maturity. Harbor City serves as

the Manager of the HCCF-1 through HCCF-4 offerings, and another Maroney

controlled company, HC Digital, serves as their "Operator." HCC Media, also

controlled by Maroney, serves as both the Manager and Operator of the HCCF-

5 offering.

27.     The following chart lists the date, term and rate of return for each

of the Harbor City offerings and the securities issued:

| Issuer | Offering Start Date | Bond Terms | Monthly Returns | Annual Returns |
|--------|---------------------|------------|-----------------|----------------|
| HC Ventures | May 1, 2015 | 1 Year 2 Year 3 Year | 2% to 5% | 24% to 60% |
| HCCF-1 | December 18, 2018 | 2 Year | 1.5% | 18% |
| HCCF-2 | January 28, 2019 | 1 Year | 1.5% | 18% |
| HCCF-3 | July 1, 2019 | 1 Year | 1.5% | 18% |
| HCCF-4 | November 24, 2019 | 1 Year | 1% | 12% |
| HCCF-5 | July 24, 2020 | 1 Year 3 Year 5 Year | 0.8333% 1.0% 1.167% | 10% 12% 14% |

28.     Harbor City, the other Harbor City related companies, and

Maroney represented to investors that proceeds from the offerings will be used

to provide "bridge funding" for Harbor City's business of generating online

customer lead campaigns for other businesses. A customer lead generation

campaign is essentially the process of capturing online interest in a service or

product for the purpose of developing sales leads. Harbor City claims that

companies contract with it in advance for an agreed upon quantity of new customer leads for their business, on a cost-per-lead basis. HC Ventures was the entity responsible for conducting the lead generation campaigns for the earlier offering involving the promissory notes and funding agreements. As for the HC SPEs bond offerings, the proceeds were to be "loaned" to either HC Digital or HCC Media, which were the entities charged with managing the SPEs and administering the internet lead generation campaigns.

29. According to the offering documents, the leads generated from the campaigns were to be sold at a substantial profit to Harbor City's "pipeline" of business clients within the "$200 Billion internet advertising sector." From the resulting profits, investors were supposed to receive monthly interest payments followed by the return of their principal when their notes or bonds mature. With each new offering, Harbor City touted its plan to "expand into as many as 100 online vertical industries." For example, according to HCCF-5's offering documents, the proceeds from that offering were to be used to "fund the ramp-up in lead production needed to service the current pipeline" of business clients.

30. Defendants solicited and raised money from investors primarily through Harbor City's website and a series of on-line marketing videos featuring Maroney posted both on the company's website and on YouTube. In the on-line videos, Defendant Maroney gives prospective investors a detailed

description of the investment opportunity. For example, he reiterates in these videos that investor money will be used to fund Harbor City's lead generation business and he tells prospects about the guaranteed returns they could expect to receive.

31.     In a video posted on Harbor City's website, Defendant Maroney describes the Harbor City bond offering as "safe as a CD" and equates it to "going down to your local bank and purchasing a certificate of deposit." In one of the YouTube videos, labeled "Harbor City Capital Corp. - Safe Investments," he shares that "one of the biggest questions" Harbor City receives from prospective investors is "how do I know my money is safe?" In the video, Defendant Maroney explains that the Harbor City "bonds are 100% secured by a cash asset-backed instrument issued by a major top-tiered bank, which ensures return of principal." These representations were false.

32.     Besides the company's website and marketing videos, Defendants also marketed their high yield bonds through pop-up advertisements on social media platforms like Facebook.     One investor recalls a Harbor City advertisement popping up on his Facebook feed advertising guaranteed annual returns of up to 18%. That investor had not heard of Maroney or Harbor City before then. Maroney also solicited some investors directly. He explained to at least one prospective investor that Harbor City bought the leads for $1.00 each

11

and resold them to businesses for $5.00 apiece. He told the same investor that
Harbor City could "guarantee double digit returns" on his investment using
that strategy.

33.     The offering materials Defendants distributed to investors
included either a "confidential information memoranda" or "private placement
memoranda," a business plan, a subscription agreement, and an "accredited
investor verification" letter. The offering memoranda and other marketing
materials used in all of the various offerings were substantially similar.

34.     Defendant Maroney maintained bank accounts for Defendant
Harbor City. He also had separate bank accounts for Defendants HC Ventures,
HC Digital, HCCF-1, HCCF-2, HCCF-3 and HCCF-4. However, the investor
funds initially deposited into those accounts were later transferred into Harbor
City's accounts and commingled along with funds from the other offerings.
Maroney was the sole signatory on all of the Harbor City and other Harbor City
related companies bank accounts.

35.     After sending in their investments, Defendant Maroney would
often send email updates to investors about Harbor City and the Harbor City
related companies. In one email Maroney sent to investors in January 2018,
Maroney falsely claimed that there was such "a MASSIVE pipeline of standing
orders for leads" from companies seeking Harbor City's services and expertise

that Harbor City does not "expect to have enough capital to serve ALL of that demand."

36.     The promissory notes, funding agreements, and bonds offered and sold by the proposed defendants are securities. First, the Defendants sold these investments to raise money to be pooled and used to fund their customer lead generation business.  In turn, investors purchased the notes, agreements, and bonds from Defendant Harbor City and its related companies in order to earn a profit in the form of significant interest payments.  Second, these investments, they were offered or sold to a broad segment of the public. Specifically, the Defendants sold their investments to more than 100 investors residing in numerous states, and offered them to many more investors.  Third, Harbor City's investors invested in the offerings– which the company marketed as "investments" – with expectations of receiving interest payments generated from the company using their money to fund its business activities.  Investors had no responsibility in the business of generating customer leads, and were entirely passive.  Instead, they relied solely on Harbor City and the other Harbor City related companies, and their management, to generate profits.

37.     The promissory notes, funding agreements, and bonds issued in this matter also constitute investment contracts and are therefore securities.

**B.    Defendants' Misuse and Misappropriation of Investor Funds**

38.    Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital,

HCC Media, and Maroney represented to investors and prospective investors

orally and in offering documents that the proceeds raised from the offerings

would be used to fund Harbor City's and the other Harbor City related

companies' customer lead generation campaigns. In return, investors were told

that they would receive monthly interest payments from the profits on the leads

generated, as well as a return of their principal when their notes, agreements,

or bonds matured.    The offering documents distributed to investors also

provided that "management will not have any discretion as to any other use of

the proceeds" nor "receive any salary."

39.    Contrary to the representations made to investors, Defendants

Harbor City, HC Ventures, the HC SPEs, HC Digital, HCC Media, and Maroney

were not engaged in a significant lead generation business and only used a

small portion of money raised from investors to fund their business.  Instead,

from January 2017 to February 2021, Harbor City generated **no** significant

revenues from its customer lead generation businesses or from any other

venture. Significantly, of the $17.1 million in investor funds deposited into the

Harbor City related bank accounts, at most only about $449,000 *may* have gone

to business expenses.

40.     Instead, Maroney used investor money to enrich himself and his family, and to perpetuate the Ponzi scheme by making payments of fictitious returns to existing investors using other investor funds. Specifically, of the $17.1 million raised from Harbor City's investors, Maroney misappropriated more than $4.88 million for his own personal use. Some of the things he spent investor money on include:

- $1.35 million to pay his credit card bills,

- $827,000 towards the purchase and maintenance of his waterfront home,

- $808,000 towards housing and renovation-related expenses,

- $90,000 to purchase a Mercedes Benz,

- $265,000 in cash or ATM withdrawals,

- $394,000 deposited into a joint bank account with his wife, Tonya Maroney, plus $58,000 towards her credit cards, and

- $617,000 transferred to Relief Defendant Celtic, a nominee entity he controls.

41.     In addition, Maroney misused approximately $1.4 million of investor money by making payments to other entities unrelated to the supposed purpose of the offerings, including money sent to a company involved in the container, storage and shipping industry. Thus, about $6 million of investors'

money was misappropriated and misused by Defendant Maroney.

42.     Moreover, Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital, and HCC Media, through Defendant Maroney, were operating a Ponzi scheme.  Since Defendants promised investors high rates of return but generated no significant revenues from its touted business model, Maroney needed new investor money to make interest payments to existing investors. Since 2017, Maroney used at least $6.5 million of investor funds to make monthly interest payments and other payouts to investors in a classic Ponzi scheme fashion.  As noted previously, Maroney was the sole signatory on all of the entity Defendants' bank accounts.

C.     **Defendants' Material Omissions and Misrepresentations to Investors**

43.     In addition, to the misrepresentations detailed above, Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital, HCC Media, and Maroney also told investors that the funding for their customer lead generation business is "provided as a line of credit that is guaranteed by a UCC-1 filed lien" using Defendants Harbor City's, HC Digital's and HCC Media's accounts receivable and purchase orders as collateral.  They claimed that with this "secure position with guaranteed repayment," they are able to mitigate the risk of loss to its investors.

44.     Investors in the HCCF-4 and HCCF-5 offerings were also provided

with an additional purported "bank guarantee" in the form of a "Standby Line

of Credit (SBLC)" issued to Harbor City from what is described as a "top tier

bank." As Maroney explained to one investor, "this cash line of credit is there,

its liquid, it's available, so that if something happens and we can't make our

bond payments or we go bankrupt, ... we have a claim on the monies that we've

put on deposit with Harbor City via this cash line of credit."

45.     In truth, the UCC filings and the SBLC do not exist.  Defendants

never made any UCC lien filings for any loan-related business transactions.

Moreover, at no point were Defendants ever issued a SBLC.  Rather, Defendant

Harbor City, through Defendant Maroney, merely entered into an "Agreement

for Service" dated November 2019 with an intermediary who would have been

responsible for arranging the issuance of a SBLC of $5 million in favor of Harbor

City.  The transaction never went through and the Agreement for Service was

canceled less than a month later due to Harbor City's and Maroney's failure to

pay the required fees to secure the SBLC.  Despite knowing this SBLC was never

obtained, Maroney continued to falsely tout its existence in publicly available

videos and directly to investors.

46.     The offering documents for the HCCF-5 offering also include a

section discussing HCC Media's "Track Record" that touted Harbor City's "four

successful bond issues." This section of the materials represented that "[a]ll previous bond issues have generated above average returns for the investors, and all investor payments have been completed successfully and on time." Defendant Maroney likewise told at least one investor that everyone has been paid back from the previous offerings. These statements are all false and misleading. In fact, several investors' "interest payments" were often delayed and eventually stopped completely. They contacted Defendant Maroney numerous times demanding their interest payments and a return of their principal investment amounts, but to date have not received their money back. More importantly, the offering materials omitted to disclose to investors that because the Defendants did not generate any significant revenues or profits from their businesses, the "interest payments" and other returns Defendants were paying to investors came from other investor money.

47. Finally, in Defendant HCCF-5's offering documents, which are dated July 2020, Defendant Maroney touts himself as a "seasoned business growth strategist" with more than 30 years of experience "starting, building, buying, and selling companies in a wide variety of industries." However, the same materials failed to disclose to investors and prospective investors that in June 2020, securities regulators in Alabama issued an administrative cease-and-desist order against Defendants Maroney, Harbor City, and HC Digital for

18

offering and selling unregistered securities and making misstatements and

omissions to residents in the state. This omission rendered false and misleading

the statements made to investors about Defendant Maroney's background and

experience.

### D. Relief Defendants Received Ill-Gotten Gains

48.     Relief Defendants Celtic and Tonya Maroney received investor

funds from Harbor City without any legitimate purpose and should be required

to disgorge these funds.

### V.     CLAIMS FOR RELIEF

### COUNT I

### Unregistered Sales of Securities in Violation of Sections 5(a) and 5(c) of the Securities Act

49.     The Commission repeats and realleges paragraphs 1 through 48 of

its Complaint.

50.     No registration statement was filed or in effect with the

Commission pursuant to the Securities Act with respect to the securities and

transactions described in this Complaint and no exemption from registration

existed with respect to these securities and transactions.

51.     Starting no later than May 2015 and continuing through the present,

Defendants, directly and indirectly, (a) made use of any means or instruments

of transportation or communication in interstate commerce or of the mails to

sell securities as described herein, through the use or medium of a prospectus or otherwise; (b) carried or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or (c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

52.    By reason of the foregoing, Defendants have violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c).

## COUNT II

## Fraud in Violation of Section 17(a)(1) of the Securities Act

53.    The Commission repeats and realleges paragraphs 1 through 48 of this Complaint.

54.    Starting no later than May 2015 and continuing through the present, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by

20

use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

55.     By reason of the foregoing, Defendants have violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Fraud in Violation of Section 17(a)(2) of the Securities Act

56.     The Commission repeats and realleges paragraphs 1 through 48 of this Complaint.

57.     Starting no later than May 2015 and continuing through the present, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

58.     By reason of the foregoing, Defendants have violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

21

## COUNT IV

### Fraud in Violation of Section 17(a)(3) of the Securities Act

59.    The Commission repeats and realleges paragraphs 1 through 48 of this Complaint.

60.    Starting no later than May 2015 and continuing through the present, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

61.    By reason of the foregoing, Defendants have violated, and unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT V

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

62.    The Commission repeats and realleges paragraphs 1 through 48 of this Complaint.

63.    Starting no later than May 2015 and continuing through the present, Defendants, directly and indirectly, by use of any means or instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of

22

the securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

64.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

## COUNT VI

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

65.     The Commission repeats and realleges paragraphs 1 through 48 of this Complaint.

66.     Starting no later than May 2015 and continuing through the present, Defendants, directly and indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of any security, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

67.     By reason of the foregoing, Defendants have violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT VII

## Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

68.    The Commission repeats and realleges paragraphs 1 through 48 of this Complaint.

69.    Starting no later than May 2015 and continuing through the present, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

70.    By reason of the foregoing, Defendants have violated, and unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

## VI.    RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court find Defendants committed the violations of the federal securities laws alleged herein and:

24

**A.**

## Temporary Restraining Order and Preliminary Injunctive Relief

Issue a Temporary Restraining Order and a Preliminary Injunction restraining and enjoining Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital, HCC Media, and Maroney from violating Sections 5(a), 5(c), and 17(a) of the Securities Act, and Section 10(b) and Rule 10b-5 of the Exchange Act.

**B.**

## Permanent Injunction

Issue a Permanent Injunction restraining and enjoining Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital, HCC Media, and Maroney, any officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating the federal securities laws alleged in this Complaint.

**C.**

## Disgorgement

Issue an Order directing all Defendants and all Relief Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

25

## D.

## Civil Penalty

Issue an Order directing the Defendants Harbor City, HC Ventures, the HC SPEs, HC Digital, HCC Media, and Maroney to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## E.

## Sworn Accounting

Issue an Order directing all Defendants and all Relief Defendants to provide a sworn accounting of all proceeds received resulting from the acts/or courses of conduct alleged in this Complaint.

## F.

## Asset Freeze

Issue an Order freezing the assets of all Defendants and all Relief Defendants until further Order of the Court.

## G.

## Records Preservation

Issue an Order restraining and enjoining all Defendants and all Relief Defendants from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the

books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to all Defendants and all Relief Defendants, wherever located and in whatever form, electronic or otherwise, that refer, reflect or relate to the acts or courses of conduct alleged in this Complaint, until further Order of this Court.

## H.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## I.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action and the Defendants and Relief Defendants in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury in this case.

April 19, 2021                          Respectfully submitted,


                                        By:  s/ Alise Johnson
                                             Alise Johnson
                                        27

Senior Trial Counsel
Florida Bar No. 0003270
Direct Dial:  (305) 982-6385
E-mail:  johnsonali@sec.gov

Attorneys for Plaintiff
**U.S.    Securities    and    Exchange
Commission**
801 Brickell Avenue, Suite 1950
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154